UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

|  |  |
|---|---|
| JOSEPH L. GENDREAU,<br><br>        Plaintiff,<br><br>    v.<br><br>CITY OF MERCER ISLAND,<br>and ROBB KRAMP,<br><br>        Defendants. | C11-1385 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on defendants' motion for summary judgment, docket no. 11. Having reviewed all papers filed in support of, and in opposition to, defendants' motion, the Court enters the following Order.

**Background**

The facts of this case are not in dispute. On June 22, 2009, Dawna Forschler and Kai Li parked their vehicles in plaintiff's driveway, blocking access to and from plaintiff's home. Gendreau Decl. at ¶¶ 3 & 4, Ex. A to Muenster Decl. (docket no. 17); <u>see</u> Ex. A to Kramp Decl. (docket no. 13 at 6). At the time, Ms. Forschler was a real estate agent, Gendreau Decl. at ¶ 3, and she was showing Mr. Li a nearby house, <u>see</u>

ORDER - 1

Ex. A to Kramp Decl.  After observing the cars in his driveway, plaintiff instructed his son to dial 911, and then confronted Ms. Forschler.  Gendreau Decl. at ¶¶ 8-10 & 17.

Although plaintiff and Ms. Forschler have given vastly different accounts of their interaction on June 22, 2009, the parties do not dispute that, later in the day, Ms. Forschler spoke on the telephone with defendant Mercer Island Police Officer Robb Kramp and then went to the Mercer Island Police Department and gave a written statement to Officer Kramp, which she signed under penalty of perjury.  *See* Ex. B to Jolley Decl. (docket no. 12); Kramp Dep. at 9:19-10:7 & 15:10-16:4, Ex. A to Jolley Decl.  In her sworn statement about the altercation with plaintiff, Ms. Forschler indicated that, as she returned to her vehicle, plaintiff got out of his car, which he had parked behind her vehicle, blocking her in, and yelled at her.  Ex. B to Jolley Decl.  According to Ms. Forschler, plaintiff then "briskly walked" toward her and "swiped" papers she was holding out of her hands.  *Id.* (docket no. 12 at 15).  Ms. Forschler was apparently so "shock[ed]" or scared by plaintiff's actions that she "lost control of [her] bladder and wet [her]self."  *Id.*  She perceived that plaintiff was "forcing [her] to stay" and she wondered whether "he want[ed] to hurt [her]."  *Id.*  Ms. Forschler further stated that she "feared for [her] safety when [she] realized [plaintiff] blocked [her] in with the purpose of keeping [her] there."  *Id.* (docket no. 12 at 16).

Ms. Forschler did not mention this exchange with plaintiff to Mercer Island Police Officer Hyderkhan, who had responded to the scene as a result of plaintiff's son's 911 call.  When asked by Officer Kramp why she did not say anything earlier to Officer Hyderkhan, Ms. Forschler explained that she observed plaintiff arguing with Officer

ORDER - 2

Hyderkhan, and she didn't feel she was in a safe place to make a report. Kramp Dep. at 11:17-21; *see also* Ex. B to Jolley Decl. (docket no. 12 at 16) ("When the officer said he would not issue a ticket, Joe got into an argument with the officer."). After leaving the scene, Ms. Forschler realized that certain documents, which had been on the passenger floorboard, were missing from her vehicle. These documents contained Ms. Forschler's home address, and according to Ms. Forschler, they could not have fallen out of her car because she did not use the passenger side door. Ex. B to Jolley Decl. (docket no. 12 at 16). Upon discovering that the papers had been removed from her car,[1] Ms. Forschler called the Mercer Island Police Department.

According to the undisputed testimony of Officer Kramp, when Ms. Forschler called to complain about the missing documents, she was "almost hysterical." Kramp Dep. at 9:21-22 & 10:19-21. She was "crying and sobbing" and Officer Kramp had difficulty at times understanding what Ms. Forschler was saying. *Id.* at 10:21-23. After speaking with Ms. Forschler over the telephone, and meeting with her to take a written statement, Officer Kramp invited plaintiff to come to the police station. *Id.* at 23:20-22. When plaintiff arrived, he provided documents to Officer Kramp, which turned out to be the ones missing from Ms. Forschler's vehicle; plaintiff indicated that he had found the documents on his driveway. *Id.* at 26:12-16; Gendreau Decl. at ¶¶ 20 & 22. Plaintiff denied snatching the other papers out of Ms. Forschler's hands, but admitted entering her vehicle, explaining that he had done so to honk the horn. Ex. A to Kramp Decl. (docket

---

[1] These papers are different from the ones that Ms. Forschler alleged plaintiff had ripped out of her hands. Kramp Dep. at 33:6-34:2, Ex. B to Muenster Decl. (docket no. 17).

ORDER - 3

no. 13 at 6).  Plaintiff declined to provide a written statement to Officer Kramp. *See* Gendreau Dep. at 71:13-16, Ex. C to Jolley Decl. (docket no. 12 at 21).  In the declaration submitted in opposition to defendants' motion for summary judgment, plaintiff has offered inconsistent statements about whether he yelled at Ms. Forschler, denying doing so in one paragraph but indicating in another paragraph that he did raise his voice and shouted at Ms. Forschler.  Gendreau Decl. at ¶¶13 & 17.

Before arresting plaintiff, Officer Kramp attempted to obtain a statement from Ms. Forschler's client, Mr. Li, but was unable to reach him.  At the time, Mr. Li did not reside in Washington, having flown in to look for housing, and he did not call back in response to Officer Kramp's voicemail.  Kramp Dep. at 22:4-11.  Officer Kramp also did not speak with Officer Hyderkhan, who had already finished his shift and gone home for the day.  *Id.* at 18:22-25.  After interviewing plaintiff, Officer Kramp arrested him for assault and battery pursuant to Mercer Island Municipal Code 9.06.020.  Ex. A to Kramp Decl.  Plaintiff's arrest appears to have been uneventful; plaintiff was handcuffed for approximately five to ten minutes, *see* Gendreau Dep. at 74:19-20; Kramp Dep. at 39:13-15, Ex. B to Muenster Decl. (docket no. 17), and after processing at the Mercer Island Police Department, plaintiff was released, Ex. A to Kramp Decl.

In August 2011, plaintiff commenced suit against the City of Mercer Island and Officer Kramp, alleging seven causes of action:  (i) violation of the Fourth Amendment prohibition against unreasonable seizure; (ii) arrest without probable cause in violation of the Fourth Amendment; (iii) municipal liability; (iv) assault and battery; (v) false arrest or false imprisonment; (vi) malicious prosecution in violation of the Fourth Amendment;

ORDER - 4

1 and (vii) malicious prosecution under state law.  Complaint (docket no. 1).  Plaintiff
2 seeks compensatory and punitive damages, as well as reasonable attorney's fees.  *Id.*
3 Defendants have moved for summary judgment on all claims, asserting *inter alia* that
4 Officer Kramp is entitled to qualified immunity.  *See* Motion (docket no. 11).  In
5 response, plaintiff has indicated that he "withdraws" his malicious prosecution claims.
6 *See* Response at 11 (docket no. 16).  The Court interprets plaintiff's response as a motion
7 under Federal Rule of Civil Procedure 41(a)(2) for voluntary dismissal, and the Court
8 GRANTS such motion.  Plaintiff's Sixth and Seventh Causes of Action for malicious
9 prosecution are DISMISSED with prejudice.  The Court now turns to consideration of
10 defendants' motion for summary judgment as to plaintiff's remaining claims.

11 **Discussion**

12 **A.      Standard for Summary Judgment**

13       The Court shall grant summary judgment if no genuine issue of material fact exists
14 and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).
15 The moving party bears the initial burden of demonstrating the absence of a genuine issue
16 of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A fact is material if
17 it might affect the outcome of the suit under the governing law.  *Anderson v. Liberty*
18 *Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To survive a motion for summary judgment, the
19 adverse party must present affirmative evidence, which "is to be believed" and from
20 which all "justifiable inferences" are to be favorably drawn.  *Id.* at 255, 257.  When the
21 record, however, taken as a whole, could not lead a rational trier of fact to find for the
22 non-moving party, summary judgment is warranted.  *See Beard v. Banks*, 548 U.S. 521,
23

529 (2006) (Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." (quoting *Celotex*, 477 U.S. at 322)).

**B.   Probable Cause**

All of plaintiff's remaining claims rely on the same faulty premise, namely that Officer Kramp lacked probable cause to arrest plaintiff. Officer Kramp's stated reason for arresting plaintiff was probable cause to believe that plaintiff committed the offense of assault and battery. *See* Ex. A to Kramp Decl. (docket no. 13 at 5). The Mercer Island Municipal Code defines assault and battery as "intentionally caus[ing] bodily harm by unlawfully touching, striking, beating or wounding another person." Mercer Is. Mun. Code 9.06.020(A). Assault itself is defined as "intentionally plac[ing] or attempt[ing] to place another person in fear or apprehension of bodily harm by any act, word or threat" or "attempt[ing] by force or violence to cause bodily harm to another person." Mercer Is. Mun. Code 9.06.010(A)(1)&(2). Both (i) assault and (ii) assault and battery are gross misdemeanors. Mercer Is. Mun. Code 9.06.010(B) & 9.06.020(B).

In Washington, a police officer may conduct a warrantless arrest of a person for committing a gross misdemeanor only when the offense is committed in the presence of the officer or when one of ten statutory provisions apply. RCW 10.31.100. One such provision permits a police officer to arrest a person, without a warrant, when the officer has probable cause to believe that the person has committed or is committing a gross misdemeanor involving physical harm or threats of harm to any person or property. *See*

ORDER - 6

RCW 10.31.100(1). This provision is coextensive with the requirements of the Fourth Amendment. <u>See</u> <u>Barry v. Fowler</u>, 902 F.2d 770 (9th Cir. 1990); <u>see also</u> <u>Ducey v. Meyers</u>, 144 Fed. Appx. 619, 623 n.3 (9th Cir. 2005) ("Washington courts have limited the reach of section 10.31.100 to conform to the requirements of the Constitution. . . . [S]ection 10.31.100 applies only in those cases in which an officer makes an arrest in a public place."). Because Officer Kramp was not present when plaintiff confronted Ms. Forschler about parking in his driveway, and Officer Kramp did not obtain an arrest warrant, plaintiff's arrest can be deemed valid only if Officer Kramp had probable cause to believe that plaintiff had committed an assault.[2]

Probable cause is evaluated with respect to "the totality of circumstances" known to the arresting officer. <u>E.g.</u>, <u>Acosta v. City of Costa Mesa</u>, 694 F.3d 960, 981 (9th Cir. 2012). The Court's inquiry is whether "a prudent person" in the same situation would have concluded that "a fair probability" existed that the person arrested had committed a crime. <u>Id.</u> at 981-82 (quoting <u>United States v. Smith</u>, 790 F.2d 789, 792 (9th Cir. 1986)). The evidence supporting probable cause need not be admissible in court, but it must be

---

[2] Although Officer Kramp identified assault and battery under Mercer Island Municipal Code 9.06.020 as the reason for plaintiff's arrest, the Court is not bound by such citation in evaluating whether probable cause supported the arrest. <u>See</u> <u>Devenpeck v. Alford</u>, 543 U.S. 146 (2004); <u>Edgerly v. City & County of San Francisco</u>, 599 F.3d 946, 954 (9th Cir. 2010) ("Because the probable cause standard is objective, probable cause supports an arrest so long as the arresting officers had probable cause to arrest the suspect for any criminal offense, regardless of their stated reason for the arrest."). Thus, the Court will consider whether probable cause existed only with respect to assault, and not as to assault and battery. According to Ms. Forschler's sworn statement, plaintiff's words and actions caused Ms. Forschler to fear that plaintiff might inflict bodily harm, which is the essence of an assault. Although plaintiff has offered his contrary view of what transpired on June 22, 2009, he seems to understand that the question before the Court is not whether plaintiff indeed assaulted or battered Ms. Forschler or even whose version of events is more credible. Instead, the proper focus is on what Officer Kramp knew at the time of plaintiff's arrest.

ORDER - 7

1  "legally sufficient and reliable." *Id.* at 982 (quoting *Franklin v. Fox*, 312 F.3d 423, 438
2  (9th Cir. 2002)).

3      In making his various remaining claims, and in resisting defendants' motion for
4  summary judgment, plaintiff contends that Ms. Forschler's statements alone were not
5  sufficient to give rise to probable cause, relying on *United States v. Struckman*, 603 F.3d
6  731 (9th Cir. 2010), and *Hopkins v. Bonvicino*, 573 F.3d 752 (9th Cir. 2009).  Plaintiff
7  appears to assert that these cases require corroboration of a victim's account and that,
8  absent verification from either the perpetrator or a witness, probable cause cannot be
9  predicated on the victim's statement.  Neither *Struckman* nor *Hopkins* stand for such
10 proposition.

11     In *Struckman*, three police officers, having no warrant, entered the fenced
12 backyard of the arrestee's home.  At the time, the only information the officers had was
13 that a neighbor called and reported the homeowners were at work and a white male
14 wearing a black jacket had thrown a red backpack over the fence and climbed into the
15 backyard.  After the officers arrived at the scene, they peered over and through the six-
16 foot tall fence and saw a red backpack lying against the back porch and the arrestee,
17 wearing a black leather jacket, walking around.  They saw no signs of forced entry into
18 the house.

19     In analyzing the arrestee's claim that evidence seized from him during the ensuing
20 search incident to arrest should have been suppressed, the Ninth Circuit reasoned that the
21 neighbor did not indicate she knew all of the occupants of the house and the neighbor's
22 observations were just as consistent with innocent behavior as with criminal activity.

23

ORDER - 8

603 F.3d at 742.  The Ninth Circuit ultimately assumed without deciding that the officers in *Struckman* had probable cause to believe the arrestee was engaged in criminal trespass when they arrived.  *Id.* at 743.  The dispositive issue in the case, however, was whether the officers' warrantless entry into the curtilage of the home was supported by exigent circumstances.  *Id.* at 739, 743 ("no amount of probable cause can justify a warrantless arrest [in] or entry [into a dwelling] absent an exception to the warrant requirement").  Before reaching this issue, the *Struckman* Court offered the quotation on which plaintiff here relies, namely that "officers may not solely rely on the claim of a citizen witness . . . , but must independently investigate the basis of the witness's knowledge or interview other witnesses."  *Id.* at 742 (quoting *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001)).[3]  This same language appears in *Hopkins*.[4]

---

[3] At best for plaintiff, this language is mere dictum.  It was not necessary to the Ninth Circuit's holding that, even assuming the officers had probable cause to believe the arrestee was engaged in criminal trespass, they did not have the exigent circumstances needed to excuse their failure to obtain a warrant before entering the curtilage of the arrestee's home.  At worst for plaintiff, the *Struckman* decision can be viewed as finding probable cause despite the lack of independent or supplemental investigation, including the failure to inquire further of the neighbor after arriving at the scene and the failure to simply ask the arrestee, prior to entering the curtilage, whether he lived in the house and what he was doing in the backyard.

[4] In *Hopkins*, the arrestee was involved in a "minor traffic incident" and drove away from the scene without providing information to the other driver.  The other driver followed the arrestee home and confronted him.  She then called police and reported a hit-and-run, stating that she had smelled alcohol on the arrestee's breath and that the arrestee appeared intoxicated.  573 F.3d at 767.  The *Hopkins* Court criticized the arresting officers' failure to inspect the arrestee's car to ascertain whether the hood was still warm, whether the vehicle had any damage consistent with the alleged hit-and-run, or whether any alcoholic beverage containers or alcoholic odor remained inside.  *Id.*  The *Hopkins* Court engaged in this analysis, however, to determine whether the warrantless intrusion into the arrestee's home was supported by probable cause and exigent circumstances.  *See id.* at 763-69.  With respect to the arrest itself, for hit-and-run, which was performed by the other driver, rather than the police, outside the arrestee's home, the Ninth Circuit concluded that the officer who took custody of the arrestee following the citizen's arrest was entitled to qualified immunity because the law was not at the time clearly established that the officer needed independent probable cause to do so.  *Id.* at 776.  Thus, *Hopkins* does not provide guidance

ORDER - 9

1    Plaintiff asserts that Officer Kramp did not comport with this standard. Plaintiff's
2 argument lacks merit. This case is not one in which the arresting officer engaged in no,
3 or minimal, investigation. Officer Kramp interviewed the victim telephonically and in
4 person, obtaining a written sworn statement from her. He attempted to reach the victim's
5 client, but was unsuccessful for reasons beyond his control. He spoke with plaintiff
6 before arresting him, and ascertained that plaintiff interacted with the victim earlier in the
7 day, that plaintiff admittedly entered the victim's car without her permission, and that
8 plaintiff was in possession of papers the victim indicated had been taken from her
9 vehicle.

10    Plaintiff contends that his arrest was not premised on probable cause because
11 Officer Kramp did not speak with Officer Hyderkhan or interview Ms. Forschler's client.
12 Plaintiff fails, however, to explain how Officer Hyderkhan's or Mr. Li's input might have
13 undermined probable cause. Ms. Forschler did not tell Officer Hyderkhan about the
14 events preceding his arrival at the scene. Thus, Officer Hyderkhan's report would add
15 nothing to the mix. Similarly, Mr. Li's account would not have affected the probable
16 cause analysis, even if contrary to Ms. Forschler's version of events. Mr. Li would not
17 have been able to discredit Ms. Forschler's subjective fear, which was based in part on
18 plaintiff's undisputed act of blocking Ms. Forschler's vehicle and preventing her from
19 leaving. Thus, plaintiff identifies no other materially relevant investigative step that
20 Officer Kramp failed to take.

---

22 concerning the quantum of information required to support an arrest in a public setting like the police station at issue here.

ORDER - 10

The Court is persuaded that Officer Kramp complied with the Ninth Circuit's admonition that police officers "must independently investigate the basis of the witness's knowledge or interview other witnesses." Plaintiff's suggestion that, if such independent investigation fails to reveal corroboration of the victim's credible account, the police officer must decline to arrest the alleged perpetrator is not supported by the cases he cites (*Struckman* and *Hopkins*) or by their predecessor (*Arpin*[5]). A rule of that nature would be unworkable, inhibiting the arrest of anyone just savvy enough to attack in private, absent any witness other than the victim, and the Court is satisfied that the Ninth Circuit has not adopted and will not adopt such standard. The Court HOLDS, as a matter of law, that "a prudent person" in the same situation as Officer Kramp would have determined that "a fair probability" existed that plaintiff had committed a crime.[6]

---

[5] In *Arpin*, a bus driver effected a citizen's arrest of a passenger. 261 F.3d at 920 ("the undisputed facts support the conclusion that Ruiz [the bus driver] arrested Arpin [the passenger] and delegated to Officers Stone and Barnes the task of taking Arpin into custody"). The bus driver accused the passenger of touching him; the passenger denied that a battery occurred. In her claim under 42 U.S.C. § 1983, asserting violation of her Fourth Amendment rights, the passenger alleged that "Officer Stone refused to identify himself, would not inform her of the reason she was being arrested, and did not allow Arpin to explain her side of the story prior to arresting her." *Id.* at 925. The Ninth Circuit concluded that these allegations raised an inference that Officers Stone and Barnes arrested the passenger based solely on the bus driver's "unexamined charge," which would not give rise to probable cause. *Arpin* concerned a citizen's arrest conducted by the same individual who was claiming to be the victim of the offense, and the passage from *Arpin* that was quoted in both *Struckman* and *Hopkins* must be viewed in that context; in such circumstances, the victim's statement might not warrant the usual deference. *See Adams v. Williams*, 407 U.S. 143, 147 (1972) (ascribing greater reliability to the report of a "victim of a street crime seek[ing] immediate police aid" than to certain types of "informants' tips").

[6] The Court's determination that Officer Kramp acted with probable cause in arresting plaintiff resolves all of plaintiff's claims. Plaintiff's understanding that only Officer Kramp moved for summary judgment, *see* Response at 3 (docket no. 16), is incorrect; the motion for summary judgment was brought on behalf of both Officer Kramp and the City of Mercer Island. Because plaintiff's state law claims against the City of Mercer Island are predicated on the doctrine of respondeat superior, the conclusion that Officer Kramp did nothing improper relieves the City of Mercer Island of any liability. Likewise, because plaintiff's claim for municipal liability under § 1983 relies on a ratification theory, rather than on a separate official

ORDER - 11

### C. Qualified Immunity

The Court also HOLDS, as a matter of law, that Officer Kramp is entitled to qualified immunity with respect to plaintiff's claims. An arresting officer is entitled to qualified immunity when "a reasonable officer would believe that probable cause existed, even if that determination was a mistake." *Acosta*, 694 F.3d at 982 n.14 (citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). The Court concludes that Officer Kramp made no mistake in formulating probable cause to arrest plaintiff, but even if he did blunder, the error was one that a reasonable officer in the same situation would have made.

### Conclusion

For the foregoing reasons, defendants' motion for summary judgment, docket no. 11, is GRANTED in part and STRICKEN in part as moot. Plaintiff's federal claims for unlawful seizure against Officer Kramp are DISMISSED with prejudice on the merits and on the alternative ground of qualified immunity. Plaintiff's federal claims for unlawful seizure and his state claims for battery and false arrest against the City of Mercer Island are DISMISSED with prejudice on the merits. Plaintiff's federal and state claims for malicious prosecution are DISMISSED with prejudice pursuant to plaintiff's motion, and defendants' motion for summary judgment as to those claims is STRICKEN as moot. The Clerk is DIRECTED to enter judgment accordingly dismissing plaintiff's claims with prejudice.

---

policy or longstanding practice or custom, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the City of Mercer Island is absolved of responsibility by the Court's ruling that plaintiff's arrest was valid.

ORDER - 12

1 | IT IS SO ORDERED.

2 | Dated this 26th day of December, 2012.

3

4

                                /s/ Thomas S. Zilly

                              THOMAS S. ZILLY
                              United States District Judge

ORDER - 13